IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 21-cv-01845-CMA

S.E.H.,

    Plaintiff,

v.

KILOLO KIJAKAZI, acting Commissioner of Social Security,[1]

    Defendant.

---

## ORDER AFFIRMING DENIAL OF DISABILITY INSURANCE BENEFITS

---

This matter is before the Court on review of the Social Security Commissioner's decision denying Plaintiff S.E.H.'s application for a period of disability and disability insurance benefits. Jurisdiction is proper under 42 U.S.C. § 405(g). For the following reasons, the Court affirms the denial of benefits.

### I.    BACKGROUND

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on April 23, 2018. (Doc. # 11-5 at 165.)[2] She alleges a disability onset date of April 2, 2018, due to degenerative disc disease, stenosis, osteoarthritis, herniated disc,

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the Defendant in this action. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

[2] The exhibits filed at Doc. # 11 constitute the Administrative Record in this matter. The Court cites to the docket number of the exhibit (*e.g.*, Doc. # 11-5) and the page number from the Administrative Record (*e.g.*, at 165).

and sciatica. (Doc. # 11-6 at 183, 187.) At the time of Plaintiff's alleged disability onset date, she was 46 years old. (*Id.* at 183.) She alleges that her impairments became debilitating after a lumbar injury she sustained while attending an exercise class. (Doc. # 13 at 5.) Because of her back pain, Plaintiff ultimately underwent a lumbar spinal fusion surgery on July 11, 2018. (*Id.*; Doc. # 11-9 at 625.)

Plaintiff's application for period of disability and disability insurance benefits was initially denied on November 6, 2018. (Doc. # 11-4 at 88.) She requested a hearing before an administrative law judge ("ALJ"), which was held on October 21, 2019. (Doc. # 11-2 at 37.) Plaintiff and an impartial vocational expert, Deborah Christensen, testified at the hearing. (*Id.*)

On February 19, 2020, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process and denied Plaintiff's request for benefits.[3] (*Id.* at 12–36.) At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since April 2, 2018, the alleged onset date. (*Id.* at 18.) At step two, the ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease, lumbar spondylosis with radiculopathy and residual symptoms from a July 11, 2018 spinal fusion, obesity, tendinosis of the bilateral hips

---

[3] The five-step process requires the ALJ to determine whether a claimant: (1) has engaged in substantial gainful activity during the alleged period of disability; (2) has a medically severe impairment or combination of impairments; (3) has a condition which meets or equals the severity of a listed impairment; (4) is able to return to his or her past relevant work; and, if not, (5) is able to perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of establishing a prima facie case of disability at steps one through four; the Commissioner has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

with low-grade partial thickness insertion tears of the bilateral gluteus minimus tendons, anxiety disorder, depressive disorder, and posttraumatic stress disorder (PTSD)." (*Id.*) The ALJ also found that Plaintiff has nonsevere impairments, including gastroesophageal reflux disease ("GERD") and diabetes mellitus. (*Id.*) However, the ALJ found that there was insufficient evidence to support diagnoses of fibromyalgia or chronic pain syndrome. (*Id.* at 18–20)

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the disability regulations. (*Id.* at 20.) The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following abilities and limitations: "[T]he claimant [is] limited to occasional bending, stooping, squatting, crouching, and crawling. She is able to perform simple, routine tasks. She is able to tolerate occasional work interactions with the public." (*Id.* at 22.)

The ALJ determined at step four that Plaintiff is unable to perform any past relevant work, including her former positions as a barber, caseworker, security guard, veteran's counselor, correction officer, probation officer, and product assembler. (*Id.* at 30.) Finally, at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including price marker, cleaner, routing clerk, document preparer, surveillance system monitor, and addresser. (*Id.* at 31–32.) Accordingly, the ALJ concluded that Plaintiff has not been under a disability from the alleged onset date through the date of the ALJ's decision and denied her request for a period of disability and disability insurance benefits. (*Id.* at 32.)

3

Plaintiff submitted a request for review of the ALJ's decision by the Appeals Council. (*Id.* at 7.) The Appeals Council denied her request on May 21, 2021, which made the ALJ's decision the final decision of the Commissioner. (*Id.* at 1); *see Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff initiated this action by filing her Complaint before this Court on July 7, 2021. (Doc. # 1.) She submitted her Opening Brief on December 3, 2021. (Doc. # 13.) The Commissioner filed a Response Brief on March 3, 2022 (Doc. # 18), and Plaintiff followed with her Reply (Doc. # 19.)

## II.     LEGAL STANDARDS

When reviewing the Commissioner's decision, the Court is limited to determining "whether the findings are supported by substantial evidence and whether the Secretary applied correct legal standards." *Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir. 1991); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 217 (1938). Substantial evidence "is more than a scintilla, but less than a preponderance." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). Thus, a decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted). In reviewing the record to make the substantial evidence determination, the Court "may not reweigh the evidence nor substitute [its] judgment for the Secretary's." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th

4

Cir. 1994). In addition, the Court "may not displace the agency's choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it *de novo*." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks and citation omitted).

In addition to the absence of substantial supporting evidence, "[f]ailure to apply the correct legal standard or to provide [the reviewing court] with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quoting *Smith v. Heckler*, 707 F.2d 1284, 1285 (11th Cir. 1983)). "There are specific rules of law that must be followed in deciding whether evidence is substantial in these disability cases." *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987). However, not every error in evaluating evidence or applying the correct legal standard warrants reversal or remand. "Courts may not reverse and remand for failure to comply with a regulation without first considering whether the error was harmless." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing that the Tenth Circuit has "specifically applied [the principle of harmless error] in social security disability cases" and citing cases). The standard for harmless error requires a finding that, considering the evidence before the ALJ, the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145. Harmless error exists where it is "inconceivable" that a different administrative

conclusion would have been reached absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

## III.   DISCUSSION

Plaintiff raises two arguments for reversing the ALJ's decision. (Doc. # 13 at 1.) She contends (1) the ALJ's findings concerning the medical opinions of record are not supported by substantial evidence and (2) the ALJ did not properly evaluate the credibility of Plaintiff's subjective allegations of disabling pain. The Court will address each argument in turn.

### A.   WHETHER THE ALJ'S FINDINGS CONCERNING MEDICAL OPINIONS ARE SUPPORTED BY SUBSTANTIAL EVIDENCE

First, Plaintiff argues that the ALJ improperly evaluated medical source opinions in determining Plaintiff's RFC at step four. (*Id.* at 4.) Specifically, Plaintiff objects to the ALJ's findings that the opinions of state agency reviewing physician Dr. Glenn Gade and consultive examiner Dr. Kerry Kamer were "persuasive" and the opinion of Plaintiff's treating orthopedic surgeon, Dr. Stephen Pehler, was "unpersuasive." (*Id.* at 6.) Plaintiff contends that none of these findings are supported by substantial evidence.

#### 1.   Standard for Reviewing Medical Source Opinions

In assessing a claimant's RFC, the ALJ must address the record's medical source opinions. *See Vigil v. Colvin*, 805 F.3d 1199, 1201–02 (10th Cir. 2015). Effective March 27, 2017, the regulations changed the procedures and standards for evaluating medical source opinions. 20 C.F.R. § 404.1520c. Under the old regulations, the opinions of treating sources are generally entitled to more weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, the new regulations set forth in 20 C.F.R. §§

404.1520c and 416.920c abrogate the treating physician rule and state that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources." Instead, the Commissioner considers the persuasiveness of each medical source opinion using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors in determining the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ must explain her approach to these two factors, but she need not expound on the remaining three unless she finds that two or more non-identical medical opinions are equally well-supported and consistent with the record. *Id.*; *see Vellone v. Saul*, 1:20-cv-00261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021). "[F]or supportability, the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone*, 2021 WL 319354, at *6. Stated differently, a supportability inquiry examines how well a medical source supported and explained their opinion. *Id.* Consistency, on the other hand, is "an all-encompassing inquiry" that focuses on how well a medical source opinion is supported, or not supported, by the entire record. *Id.*

7

      2.      <u>Opinions of Dr. Kamer and Dr. Gade</u>

Dr. Kamer conducted a consultative exam of Plaintiff on October 23, 2018. (Doc. # 11-9 at 574.) In his report, Dr. Kamer reviewed Plaintiff's records and noted that Plaintiff had a lumbar fusion in July 2018 as treatment of spinal degenerative disease and there were no complications from the surgery. (*Id.*) He further observed that she saw her treating surgeon in September 2018 and good progress was noted. (*Id.*) Plaintiff reported five out of ten pain in her lumbar spine with numbness in her bilateral thighs and cramping in her left leg. (*Id.*) Dr. Kamer noted that Plaintiff "appeared to sit comfortably during the exam and without pain-mitigating movements." (*Id.* at 576.) He indicated that "[s]he did not appear uncomfortable getting on and off the examination table," "she arose spontaneously and unaided from a seated position without discernible discomfort," and "[s]he transferred from seated to laying supine on the exam table and vice versa with a straight sit-up maneuver, with no functional difficulty or apparent discomfort." (*Id.*) However, Dr. Kamer also wrote that she "was intermittently tearful and she intermittently exhibited slight pain behavior during the visit." (*Id.*)

With respect to Plaintiff's coordination and gait, Dr. Kamer reported "[a]mbulation did not appear ataxic or antalgic," "[a]ble to stand and walk on heels and toes," and "[d]eep squat intact to 30% with sub-maximal effort." (*Id.* at 577.) Further, Dr. Kamer observed that "[u]nassisted gait showed bilaterally symmetric weight-bearing, normal stride-length, and a normal pace" and "[n]o frank gait disturbance was present." (*Id.*) Although Dr. Kamer indicated that Plaintiff brought a rolling walker as an assistive device to the exam, Dr. Kamer noted "no off-weighting or use for stability." He reported

that she did not use the walker during the ambulatory evaluation and there did not appear to be any wear on the walker. (*Id.*)

Dr. Kamer's examination included coordination, range-of-motion, and strength testing; straight leg raise testing, FABER, Gaenslen's Sign, and Milgram's testing; a spinal examination; and neurologic testing. (*Id.* at 577–79.) Based on the overall exam, Dr. Kamer recommended no limitation as to the number of hours that Plaintiff could sit or stand during an 8-hour workday. (*Id.* at 579.) He recommended that Plaintiff should be able to walk at least frequently (3 to 6 hours) during a normal 8-hour workday and could bend, stoop, squat, crouch, and/or crawl occasionally. (*Id.*) In addition, he did not recommend an assistive device. (*Id.*)

State agency reviewing physician Dr. Gade conducted a review of Plaintiff's records and completed a physical residual functional capacity assessment on November 2, 2018. (Doc. # 11-3 at 80–83.) Based on his review, Dr. Gade opined that Plaintiff was limited to light work and that she could climb ramps, stairs, ladders, ropes, and scaffolds, stoop, kneel, crouch, and crawl "frequently." (*Id.* at 80–82.) He further opined that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, and could stand, walk, and sit for more than 6 hours on a sustained basis in an 8-hour workday. (*Id.* at 80.) He stated that her postural limitations were based on her "L spine XR multilevel degen changes LR-S1 disc space narrowing, s/p 7/2018 surgery lumbar decompression and LR-S1 fusion." (*Id.* at 81.) In his explanation of Plaintiff's RFC, Dr. Gade cited several observations and results from Dr. Kamer's consultive examination, including that Plaintiff showed "no spinal TTP, reflexes 2/4,

sensate light touch, strength 5/5, grip strength 5/5, no muscle weakness or motor loss." (*Id.* at 81–82.)

The ALJ included a detailed summary of Dr. Kamer's consultative examination report in her narrative RFC discussion at step four. (Doc. # 11-2 at 25–26.) She found Dr. Kamer's opinion "persuasive" and explained that "Dr. Kamer's medical opinion is supported by his examination findings that revealed minimal pain behaviors, general normal ambulation, and full muscle strength and sensation." (*Id.* at 29.) With respect to Dr. Gade's opinion, the ALJ found that "Dr. Gade supported his opinion with a detailed explanation that references specific objective findings." (*Id.*) Further, the ALJ found that both Dr. Kamer's and Dr. Gade's opinions were "consistent with the claimant's post surgery recovery, the limited abnormalities detailed in the record, and the claimant's lack of medical treatment after April 2019." (*Id.*)

Plaintiff first argues that the ALJ improperly found Dr. Kamer's opinion persuasive on the basis that Dr. Kamer's opinion was "supported by **his** examination findings." (Doc. # 13 at 6.) Plaintiff asserts that "most of Dr. Kramer's [sic] 'examination findings' are subjective, unsupported observations" and contends that Dr. Kamer "provides absolutely no objective medical evidence in support of his findings." (*Id.*) The Court disagrees. Plaintiff provides no authority for her position that Dr. Kamer may not rely on his own examination findings as objective medical evidence supporting his opinion. Moreover, her argument is belied by the regulations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the

more persuasive the medical opinions or prior administrate finding(s) will be." 20 C.F.R. § 404.1520c(c)(1) (defining "supportability"). Nowhere do the regulations state that a medical source may not rely on his own examination to provide "objective medical evidence" and "supporting explanations" for his opinion.

Further, the regulations define "objective medical evidence" as "signs, laboratory findings, or both." 20 C.F.R. § 404.1502(h). "Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed" and "must be shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. § 404.1502(h). Dr. Kamer conducted several relevant examinations of Plaintiff and included those results in his report, noting that her straight leg test, FABER test, Gaenslen's test, and Milgram's were all negative bilaterally.[4] Plaintiff does not appear to contest that these examinations constitute "medically acceptable clinical diagnostic techniques" relevant to evaluating Plaintiff's back and hip impairments, pain, and functional abilities. In light of these results and Dr. Kamer's thorough evaluation, the Court sees no error in the ALJ's finding that "Dr. Kamer's medical opinion is supported by his examination findings that revealed minimal pain behaviors, generally normal ambulation, and full muscle strength and sensation." (Doc. # 11-2 at 29.)

---

[4] The Court borrows the following explanation from *Carla L.P. v. Berryhill*, No. 2:18 CV 60 (JMB), 2019 WL 2195471, at *3 n.2 (E.D. Mo. May 21, 2019) (internal quotation marks and citations omitted):

> The FABER (Patrick's) Test stands for: Flexion, Abduction, and External Rotation. These three movements combined result in a clinical pain provocation test to assist in diagnosis of pathologies at the hip, lumbar and sacroiliac region. Gaenslen's Test is used to detect musculoskeletal abnormalities and primary-chronic inflammation of the lumbar vertebrae and sacroiliac joint.

Plaintiff next argues that "Dr. Gade's opinion suffers from the same fundamental flaws as Dr. Kramer's [sic]" because "it appears that Dr. Gade simply cut and paste Dr. Kramer's [sic] examination findings and parroted Dr. Kramer's [sic] RFC recommendations." (Doc. # 13 at 10.) The Court rejects this argument for the same reasons. The ALJ's determination that Dr. Kamer's opinion was supported by his examination findings is supported by substantial evidence. To the extent Dr. Gade relied on Dr. Kamer's consultive examination in opining on Plaintiff's limitations, the Court finds that such reliance is appropriate because Dr. Kamer's examination included medically acceptable diagnostic techniques and he supported his opinion with objective medical evidence and detailed explanations.

In addition to challenging the ALJ's supportability finding, Plaintiff contends that the ALJ erred in finding Dr. Kamer's and Dr. Gade's opinions persuasive on the basis of consistency with the medical record. (Doc. # 13 at 10–11.) Plaintiff notes that Dr. Kamer is "the only medical provider to observe Plaintiff as having a normal gait following her lumbar spinal fusion in July of 2018." (*Id.* at 10.) In addition, Plaintiff argues that Dr. Kamer's and Dr. Gade's opinions regarding Plaintiff's functional limitations, particularly those concerning her ability to ambulate, stand, and walk without an assistive device, are inconsistent with MRI results from a year later, in October and November 2019, which indicated some additional lumbar impairment.[5] (Doc. # 19 at 4.)

---

[5] The October MRI images revealed a small herniation extending superiorly into the right lateral recess and neural foramen at L1-L2. (Doc. # 11-10 at 997.) The right neural foramen was moderately narrowed with probable impingement on the right L1 nerve root. (*Id.*) There was no spinal canal or neural foramen stenosis at the levels of her prior fusion, however, there was mild disc bulge at L3-4 with mild encroachment on the lateral recesses and possibly mild

Although the Court agrees with Plaintiff that Dr. Kamer's and Dr. Gade's opinions are not entirely consistent with the 2019 MRI results, the Court declines to disturb the ALJ's evaluation of their medical opinions on this basis. The Court may not "reweigh the evidence nor substitute [its] judgment for the Secretary's" in determining whether substantial evidence supports the ALJ's determination. *Glass*, 43 F.3d at 1395. Having carefully reviewed the medical record, the Court is satisfied that substantial evidence supports the ALJ's findings that the opinions are "consistent with the claimant's post surgery recovery" and "the limited abnormalities detailed in the record." (Doc. # 11-2 at 29.) For example, a September 8, 2018 examination with Plaintiff's treating orthopedic surgeon, Dr. Pehler, indicated that Plaintiff had 5/5 strength throughout her lower extremities, intact sensation, 1+ reflexes, and negative Rhomberg, Babinski, and clonus testing. (Doc. # 11-9 at 567.) An April 2019 examination with Dr. Pehler showed the same objective results, and Plaintiff "denie[d] any significant changes in her lower extremity strength, sensation, [or] motor function." (*Id.* at 663–64.) At several follow up appointments with Dr. Pehler after her surgery, Plaintiff reported that she was improving, and records show no indication of post-surgery complications. (*Id.* at 638, 643, 646, 663.) The ALJ also observed that, aside from the MRIs in October and November 2019, the record shows that "the claimant did not receive medical treatment from Dr. Pehler, Dr, Jones, her primary care provider, or any other medical professional

---

impingement on the L4 nerve roots. (*Id.* at 998.) The November 2019 MRI indicated moderate bilateral abductor tendinosis with low-grade, partial-thickness insertional tears of the bilateral gluteus minimus tendons, mild left greater trochanteric bursitis, mild undersurface fraying/tearing of the anterosuperior labrums bilaterally, and partially visualized postsurgical changes of the lower lumbar spine. (*Id.* at 993.)

13

after April 23, 2019." (*Id.* at 27.) It thus appears that aside from receiving two MRIs, Plaintiff did not receive medical treatment after April 2019.

Based on this review, the Court finds that there is "more than a scintilla" of evidence supporting the ALJ's determination that Dr. Kamer's and Dr. Gade's opinions are persuasive because they are supported by objective medical evidence and consistent with other evidence in the medical record. *Lax*, 489 F.3d at 1084. Because such evidence is not "overwhelmed" by other evidence in the record, the Court affirms the ALJ's evaluation of Dr. Kamer's and Dr. Gade's opinions. *Wall*, 561 F.3d at 1052.

3. Opinion of Dr. Pehler

Plaintiff next objects to the ALJ's finding that the opinion of her treating orthopedic surgeon, Dr. Pehler, was "unpersuasive." (Doc. # 13 at 8–9.) In determining Plaintiff's RFC, the ALJ thoroughly considered and discussed treatment records from Dr. Pehler relating to Plaintiff's lumbar fusion surgery and her post-operative follow up appointments. (Doc. # 11-2 at 24–30.) The ALJ also considered a Residual Functional Capacity Questionnaire that Dr. Pehler completed, although the ALJ observed that "the date is illegible, so it is unclear if Dr. Pehler completed this medical opinion before the claimant's surgery, during the post-operative period, or after she had recovered from the surgery." (*Id.* at 29.)  In the Questionnaire, Dr. Pehler opined that Plaintiff was "[i]ncapable of even 'low stress' jobs," that she could sit for only 15 minutes and stand for only 5 minutes at a time, and that she could sit and stand/walk for less than 2 hours in an 8-hour working day. (Doc. # 11-9 at 585–86.) He further opined that Plaintiff could never twist, stoop, crouch, or climb ladders or stairs and that she could only "rarely" lift

14

less than 10 pounds. (*Id.* at 587–88.) The ALJ found Dr. Pehler's opinion "not persuasive" because it was "not supported by his treatment findings, which generally document 5/5 muscle strength, normal sensation, and 1+ reflexes in the bilateral upper and lower extremities from August through December 2018 and then again in April 2019." (Doc. # 11-2 at 29.) She explained that "Dr. Pehler's generally normal examination findings do not support the extreme limitations in his medical opinion" and found that "the claimant's reports of moderate pain levels in May 2018 and the absence of medical treatment after this point is inconsistent with the limitations identified by Dr. Pehler." (*Id.*)

      The Court finds that the ALJ sufficiently explained her reasons for finding Dr. Pehler's opinion in the Questionnaire "not persuasive" and that those reasons are supported by substantial evidence. Most significantly, Dr. Pehler's opinions are not supported by the objective medical evidence detailed in his examinations and reports, which the Court described *supra*, and his recommended limitations are inconsistent with the fact that the record indicates that Plaintiff did not receive medical treatment from April to October 2019. *See Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (observing that a claimant had not been treated by her physicians during the nine months preceding the hearing in evaluating in evaluating her subjective claims of pain). Although Plaintiff argues that the ALJ improperly attempted to discredit Dr. Pehler's medical opinion by noting the illegibility of the date on the Questionnaire, the Court does not find that the ALJ's observation of the illegibility of the date is relevant. Regardless of the date the Questionnaire was completed, the ALJ adequately explained that Dr.

15

Pehler's opinion was unsupported by objective medical evidence and inconsistent with the record as a whole. The Court therefore affirms the ALJ's evaluation of Dr. Pehler's medical opinion.

**B.     WHETHER THE ALJ ERRED IN EVALUATING PLAINTIFF'S SUBJECTIVE COMPLAINTS OF DISABLING PAIN**

Next, Plaintiff argues that the ALJ failed to properly evaluate the credibility of her subjective complaints of disabling pain. (Doc. # 13 at 12.)

An ALJ must consider a claimant's subjective complaints in determining whether the claimant is disabled. 20 C.F.R. § 404.1529. If a claimant has medically determinable impairments—i.e., an objectively verified impairment—that could cause a claimant's symptoms, then the ALJ determines to what extent the claimant's symptoms are consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a)-(b); SSR 16-3p, 2017 WL 5180304. 20 C.F.R. § 404.1529 sets forth certain factors the ALJ should consider in weighing a claimant's subjective reports.[6] However, Tenth Circuit precedent "'does not require a formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on in

---

[6] These factors include:

    (i) the claimant's daily activities;
    (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms;
    (iii) precipitating and aggravating factors;
    (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her pain or other symptoms;
    (v) treatment, other than medication, the claimant receives or has received for relief of his or her pain or other symptoms;
    (vi) any measures the claimant uses or has used to relieve his or her pain or other symptoms; and
    (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

evaluating the claimant's credibility.'" *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). "Credibility determinations are peculiarly the province of the finder of fact, and [the reviewing court] will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).

In this case, the ALJ set forth the specific evidence she relied on to discount Plaintiff's subjective reports, and her decision to do so is supported by substantial evidence. The ALJ found that Plaintiff's medically determinable impairments could cause her symptoms, but that her statements about their limiting effects were inconsistent "because the objective findings in the record do not document abnormalities that support the severity of symptoms described by the claimant throughout the disability process." (Doc. # 11-2 at 24); *see* 20 C.F.R. § 404.1529(c)(3) (explaining that the ALJ will consider consistency between subjective complaints and objective medical evidence, as well as claimant's daily activities and effectiveness of medication and/or treatment). The ALJ then extensively reviewed these objective findings in the record, including normal examination results from Plaintiff's post-operative follow up appointments, diagnostic imaging showing that Plaintiff's lumbar fixation was stable without evidence of hardware loosening, and normal results from Plaintiff's consultive examination with Dr. Kamer. *See supra*; (Doc. # 11-2 at 24–28.)

The Court is unpersuaded by Plaintiff's criticism of a few aspects of the ALJ's evaluation of her subjective complaints. First, Plaintiff objects to the ALJ's observation at step two of her written decision that "the claimant's current issues with lumbar pain

17

began in April 2018 following injuries sustained while doing Zumba and Pilates" and that her "ability to engage in physically demanding exercise routines prior to her lumbar injury" suggests that she was not experiencing "severely limited widespread pain at that time." (Doc. # 13 at 10.) The Court does not find any error in the ALJ's statement because the ALJ did not rely on Plaintiff's pre-injury activities to discount Plaintiff's subjective complaints of pain after the alleged disability onset date—instead, the ALJ considered those activities to assess whether Plaintiff was experiencing fibromyalgia limitations prior to the alleged onset date and whether Plaintiff's claimed fibromyalgia was a medically determinable or severe impairment. *See* (Doc. # 11-2 at 19.)

Plaintiff also argues (1) the ALJ's observation that records from a February 2019 visit with her primary care provider do not indicate that Plaintiff was experiencing back pain is "cherry picking" because the purpose of that visit was sinusitis, not back pain; (2) the ALJ improperly relied on Plaintiff's Function Report to discredit Plaintiff's reported difficulties with ambulating because the Function Report was completed in June 2018, before Plaintiff's back surgery; and (3) the ALJ stated that Plaintiff's medical treatment ended in April of 2019, when records show that Plaintiff received MRIs in October and November 2019. Even if the Court were to agree with Plaintiff that the ALJ incorrectly relied on any of this evidence in discounting Plaintiff's subjective complaints, the Court finds that there is still substantial evidence to support the ALJ's determination that Plaintiff's stated limitations were inconsistent with the *objective medical evidence* in this case and other evidence in the record.

Moreover, having thoroughly reviewed the medical record and the ALJ's analysis of Plaintiff's subjective complaints, the Court is satisfied that none of the above three examples highlighted by Plaintiff constitute improper "cherry picking" or other error by the ALJ. In this case, the ALJ did not "pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004.) Although Plaintiff objects to a few of the points made by the ALJ, Plaintiff does not refute the other several pages of analysis in which the ALJ explained that Plaintiff's subjective complaints are not entirely consistent with the objective medical evidence in the record, Plaintiff's self-reported progress at post-operative follow up appointments, and her lack of medical treatment, other than two MRIs, after April 2019. (Doc. # 11-2 at 23–30.) Because the ALJ's evaluation of Plaintiff's subject complaints is supported by substantial evidence, the Court will not disturb her findings.

## IV.     CONCLUSION

For the foregoing reasons, it is ORDERED that the ALJ's denial of disability benefits is AFFIRMED.

DATED: October 11, 2022

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge